# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 378 | **DATE** | 8/21/2003 |
| **CASE TITLE** | Naji B. Zayed vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Commissioner's motion for summary judgment [15-1] is granted and the Claimant's motion for summary judgment [10-1] is denied. The decision of the Administrative Law Judge is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | AUG 26 2003 | | 18 |
| | Docketing to mail notices. | date docketed | | |
| | Mail AO 450 form. | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | 8/21/2003 | | |
| DK | courtroom deputy's initials | date mailed notice | | |
| | | DK | | |
| | | mailing deputy initials | | |

U.S. DISTRICT COURT
CLERK

03 AUG 25 PH 8: 47

FILED FOR DOCKETING

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAJI B. ZAYED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 03 C 0378 |
| v. | ) | |
| | ) | Magistrate Judge Morton Denlow |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

AUG 2 6 2003

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff, Naji B. Zayed ("Claimant"), seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and denying him Supplemental Security Income ("SSI") benefits under 42 U.S.C. § 405(g). This case is before the Court on cross-motions for summary judgment. Claimant argues that the Administrative Law Judge ("ALJ") ignored medical and psychological evidence in determining that Claimant could perform a significant range of medium work, and finding a significant number of appropriate jobs in the national economy. For the following reasons, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

18

## II. BACKGROUND FACTS

### A. PROCEDURAL HISTORY

Claimant filed an application for SSI on June 1, 2000 alleging that he had been disabled since March 10, 2000. R. 81. His application was denied on September 14, 2000. R. 26. His application was denied again, R. 25, after he requested a reconsideration of the initial determination. R. 30. Claimant requested a hearing before an ALJ on January 24, 2001. R. 39. A hearing was held before ALJ B. Carleton Bailey, Jr. on December 20, 2001. R. 270-90. Claimant was represented by counsel at the hearing. R. 270. In addition to the Claimant, Dr. Earnest Mond testified as the medical expert ("ME"). R. 282-88. Ms. Sisilia Zayed, the Claimant's wife, and Ms. Gleeann Curr, a vocational expert ("VE"), appeared but did not testify. R. 270, 289.

A supplemental hearing was held on May 16, 2002. R. 291-333. Claimant was again represented by counsel. R. 291. Claimant, Dr. Larry Kravitz, the ME, and Dr. Richard Hamersma, the VE, testified at the hearing. R. 291-333. The ALJ issued a decision on July 25, 2002 finding the Claimant not disabled and denying benefits. R. 13-22. Claimant filed a request for review of the ALJ's decision with the Appeals Council on September 14, 2002, R. 9, which denied review on December 6, 2002. R. 6. Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1455.

Claimant filed a complaint seeking review of the final decision of the Commissioner in this Court on January 17, 2003. The case is now before the Court on cross-motions for

2

summary judgment.

## B. HEARING TESTIMONY

### 1. Claimant's Hearing Testimony

Claimant testified at both the original and supplemental hearings before the ALJ. R. 279-83, 295-314. Claimant was born on July 29, 1947 and was fifty-four years old at the time of the hearings. R. 279. He was born in Palestine and emigrated to the United States in 1969. *Id.* Claimant has three children; one in college, and an adult daughter and teenage son living at home. R. 296. He pays rent on the an apartment with his daughter's help. *Id.* Claimant's wife is employed as a housekeeper through public aid. R. 296-97. Claimant attended school through the sixth grade in Palestine. R. 299. He reads Arabic, but reads only enough English to understand the newspaper headlines. R. 299. He can not make change at a grocery store. *Id.*

Claimant's last employer was American United, a taxi cab company. R. 300. While he was required to make change at this job, he often made mistakes. *Id.* He worked as a cab driver for this company from January of 1999 through March of 2000. *Id.* He worked twelve hours per day, until he quit in March 2000 due to chest pain. *Id.* Claimant went to the emergency room where the doctors diagnosed no heart problems but indicated that he suffered from depression. *Id.* He had a neurological consultation, and was sent for physical therapy and to a psychiatrist. *Id.*

Before his employment as a cab driver, the Claimant worked at odd jobs, including

stocking shelves at the grocery store and working as a salesman at flea markets. R. 301. He stopped working at the grocery store because he became irritable and nervous around people. *Id.*

Claimant gained fifty-five pounds after quitting smoking. R. 280. Since quitting, Claimant feels that he has increased arguing with his family and become less active socially. R. 280-81. Smoking reduced Mr. Zayed's anxiety which is worsened by his coffee consumption of approximately twenty-seven cups per day. R. 281. At the time of the second hearing, Claimant had gained approximately fifteen more pounds R. 295.

Claimant experienced back pain and prostate problems that began in March of 2001. R. 283. Although Claimant was treated successfully for his prostate problems, the problem recurred. *Id.* His back pain was not relieved after the treatment of his prostate. *Id.*

Claimant has problems sleeping. R. 303. He goes to sleep at approximately 11:00 p.m., R. 317, and wakes up at approximately 2 a.m. without returning to sleep. R. 303. He begins drinking coffee when he gets up and had approximately nine cups before the supplemental hearing with the ALJ. R. 317. He explained how much he enjoys coffee and indicated that he could not live without it. *Id.* His doctors have recommended that he stop drinking coffee and begin exercise. R. 304. Claimant exercises in his room by stretching with a rubber band, R. 304, 306, and taking walks outside early in the morning. R. 306.

Claimant does not do any household chores, but sits in his room all day watching TV. R. 305. His wife reminds him to complete personal hygiene tasks. *Id.* He becomes very

4

irritated when grocery shopping, and taking public transportation. *Id.* Claimant also experiences chest pain and begins to sweat when he drives for longer than thirty minutes. R. 318. Although able to use public transportation, Claimant becomes irritated because he thinks people are looking at him and sometimes misses his stop. R. 307, 318-19.

In addition to chest pain and anxiety, Claimant suffers from back pain. R. 307. His back pain is not constant, but becomes worse with increased periods of sitting. *Id.* Claimant experiences chest pain when he becomes irritated–approximately three times per day. R. 308. Claimant took Vioxx in the past for the neck pain, but currently does stretches to help. *Id.* He takes Selexa for his back pain which has improved his condition. *Id.* He indicated, however, that the most comfortable position for him is lying down on his side. *Id.* Claimant also takes Flomax and Proscar for his prostate, Lipitor, Effexor, and Zyprexa. R. 308-09. Claimant indicated that the Zyprexa has made him eat more and gain weight. R. 309. Claimant gaged the effectiveness of his medications at about fifty per cent. *Id.*

Claimant sometimes has suicidal thoughts, but indicated that he would never commit suicide. R. 310. Claimant does not enjoy being around other people. *Id.* He sees a psychiatrist, Dr. Sicard, on a regular basis, R. 310, 312, beginning in March 2000. R. 311. He has been on medication since that time, but has not improved enough to return to work as a cab driver. *Id.* In the month before the hearing, Claimant's Effexor dosage was increased to 300 milligrams, but Claimant has not noticed any positive change. R. 313-14.

Claimant does no cooking; he eats most of his meals and spends most of his time in his room. His family tries to encourage him to leave the bedroom, but he argues with them. R. 310-11. The Claimant's relationship with his children has deteriorated since he has become less social and more reclusive. R. 311. Claimant believes that his job driving a cab caused his current health and psychological problems. R. 312.

## 2. Medical Expert Testimony

### a. Dr. Ernest Mond

Dr. Ernest Mond, an internist, testified at the first hearing as the ME. R. 270, 282-88. He listed Claimant's medical problems as: 1) lower back pain with a normal gait, tendon reflexes, straight leg raising, and x-rays, but with some dizziness, 2) a history of prostate problems, with benign prostatic hypertrophy, evidence of prostatitis, and inability to empty his bladder completely for ten years, 3) history of chest pain with no indication of coronary artery disease, and a normal neurological exam, but which may radiate into the left shoulder and face, and 4) anxiety and depression. R. 283-86.

Dr. Mond opined that Claimant's impairments did not meet or equal a listing. R. 286. He further gave an opinion on Claimant's work-related limitations. R. 287-88. Claimant has no limitation on sitting, standing, walking, pushing, pulling, simple grasping and fine motor manipulation, operating foot controls, reaching above the shoulder, exposure to changes in temperature and humidity, commercial driving, and exposure to dust fumes and gases. R. 287-88. Furthermore, Claimant can lift fifty pounds occasionally and twenty-five pounds

6

frequently, can bend, squat, crawl, and climb occasionally, and should avoid unprotected heights and moving machinery such as forklifts. *Id.*

### b. Dr. Larry Kravitz

Dr. Larry Kravitz, a psychologist, testified at the supplemental hearing as the ME. R. 291, 314-26. He listed the Claimant's mental impairments as: 1) major depression, and 2) mild cognitive difficulties with severe depressive disorder. R. 320. He thought Claimant's cognitive functioning was in the low average range. R. 321. This was further supported by Claimant's ability to follow the conversation while testifying and respond the ALJ's questions. R. 321-22. Dr. Kravitz found that Claimant did not meet or equal a listing. R. 322.

The ALJ then asked Dr. Kravitz if he agreed with the mental residual functional capacity assessment ("MRFC") completed by Dr. David Paul Smith. R. 322. Dr. Kravitz agreed with the majority of Dr. Smith's MRFC, but disagreed on several indicators. R. 322-26. Dr. Smith opined that Claimant's ability to carry out very short and simple instructions was moderately limited, R. 214, while Dr. Kravitz thought Claimant would be limited in this area only when experiencing stress which would be only occasionally. R. 323. Dr. Kravitz also disagreed with Dr. Smith's assessment of Claimant's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Dr. Smith indicated Claimant was not significantly limited in this area, R. 214, but Dr. Kravitz indicated that due to Claimant's history of spending so much time in his bedroom, he would

7

be moderately limited in this area. R. 323-24. In addition, Dr. Smith indicated that Claimant was not significantly limited in the two following areas, while Dr. Kravitz opined that Claimant would experience a moderate limitation: 1) the ability to interact appropriately with the general public, and 2) the ability to accept instructions and respond appropriately to criticism from supervisors. R. 215, 325. Finally, Dr. Smith indicated a moderate limitation in Claimant's ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. R. 215. Dr. Kravitz, on the other hand, indicated that Claimant was not significantly limited in this area. R. 325-26.

### 3. Vocational Expert Testimony

Dr. Richard J. Hamersma testified as the VE at the supplemental hearing. R. 76-77, 326-333. He characterized Claimant as a person approaching advanced age with marginal education. R. 327. Although Claimant had low Wide Range Achievement Test scores ("WRAT"), Dr. Hamersma thought these low scores were due to the different cultural setting, and Claimant is not illiterate. *Id.* Claimant's past relevant work as a cab driver was unskilled or semi-skilled medium work. R. 328. Dr. Hamersma could not determine if Claimant's work prior to the cab driver was significant gainful activity. *Id.*

The ALJ presented the following hypothetical to the VE: a person who can sit, stand, or walk for eight hours; lift fifty pounds occasionally and twenty-five pounds frequently; can not be exposed to unprotected heights or moving machinery; has a marked limitation in understanding and remembering detailed instructions; a moderate to mild limitation in

8

carrying out short instructions which is moderate when he experiences stress; has a moderate limitation in his ability to work in a schedule, maintain regular attendance, and be punctual within customary limits; has a moderate limitation in his ability to carry out a normal workweek without interruptions from psychologically based symptoms; has a moderate limitation in his ability to interact with the general public and accept instructions from and respond to supervisors; and a moderate limitation in his ability to travel to unfamiliar places. R. 328-29.

The VE responded that such a person would not be able to return to the Claimant's past relevant work as a cab driver. R. 329. The person could, however, perform simple unskilled light or medium level work. R. 330. In the light range, the VE indicated the existence of 8,000 assembly jobs, 7,000 hand-packing jobs, and 6,500 inspection jobs. *Id.* All of these jobs are considered low stress and have no interaction with the public. *Id.* In addition, there is very little interaction with supervisors. *Id.*

The VE further opined that a moderate limitation in the person's ability to complete a workday or week without interruption from psychologically based symptoms would not preclude this type of work or reduce the number of available jobs. R. 330-31. Further, a moderate limitation in the ability to travel to unfamiliar places should not preclude this work because there is no travel involved once the person is at work. R. 331.

Upon questioning from Claimant's counsel, the VE indicated that a hypothetical person would not be able to perform work that exceeds his stress level. R. 332. He also

9

indicated that the person must be able to travel to the place of employment on a daily basis. *Id.*

## C.   MEDICAL EVIDENCE

Claimant was treated by Dr. Jodi Rubin in June and July of 2000 for urinary retention problems. R. 176-80. Claimant also saw Dr. Christopher Coogan for prostate problems in August and September of 2000. R. 147-60. His problems appear to be resolved. R. 152. Claimant was treated by neurologist, Dr. Richard Rovner, throughout 2000. R. 263, 64-66, 171-73. Claimant's original complaints included left chest wall pain, left arm pain, and intermittent numbness and tingling of the left upper extremity and face. R. 171. Claimant reported to Dr. Rovner that a cardiac evaluation was completed with normal results. *Id.*

At Dr. Rovner's referral, a nerve conduction study was completed and x-rays were taken of the Claimant's back. R. 169-70, 174. Although the nerve conduction study revealed mildly abnormal results, there was no evidence of a left cervical radiculopathy. R. 170. The back x-rays indicated some slight calcification, but revealed no abnormalities related to the Claimant's chest pain. R. 174. On July 14, 2000, Dr. Rovner wrote a letter on the Claimant's behalf indicating that he would be unable to complete jury duty due to his difficulty sitting in a confined space and difficulty with concentration. R. 166. Claimant also received physical therapy for his chest and shoulder pain. R. 169.

On December 7, 2000, Dr. Peter Biale completed a consultive internal medicine examination. R. 186-90. He indicated three problems in his clinical impressions: 1) low

back pain, 2) dizziness, and 3) gastro-esophageal reflux disease that was being treated with Prilosec. R. 188-89. In late December, a Department of Disability Services consultant performed a residual functional capacity assessment ("RFC") indicating that Claimant could lift fifty pounds occasionally and twenty-five pounds frequently; he could stand, walk, or sit for six hours in an eight hour work day, his pushing and pulling ability was limited only by his lifting limitations; and he could occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 191-98. He had no other work related limitations. *Id.* In addition, Dr. Eugene Kovalsky completed a consultive radiological examination revealing normal results. R. 183-85.

Claimant also saw Dr. Carl Sicard for major depression with anxiety beginning in October of 2000. R. 200. Dr. Sicard was treating the depression with medication and psychotherapy. *Id.* In late 2001, Dr. Sicard completed a report indicating that weekly appointments may improve Claimant's condition, R. 206, and that neuropsychological testing would be an appropriate step in Claimant's evaluation. R. 209. In addition, Dr. Sicard completed a supplemental MRFC assessment indicating Claimant had a moderate impairment in his abilities to: 1) relate to other people, complete daily activities such as his ability to attend meetings and socialize with friends, and 3) respond to customary work pressures. R. 210.

On Dr. Sicard's referral, a neuropsychological exam was completed in January 2002 by Beth A. Keys and Dr. David Nyenhuis. R. 227-30. The following tests were

administered: 1) Peabody Picture Vocabulary Test-3rd edition ("PPVT-3"), 2) Wechsler Adult Intelligence Scale-3rd edition ("WAIS-3"), 3) Similarities, Matrix Reasoning, Digit-Symbol, 4) Trailmaking Test, 5) Animal Fluency, 6) Wechsler Memory Scale-3rd edition ("WMS-3"), 7) Memory for Objects, 8) Beck Depression Inventory-2nd edition ("BDI-2"), and 9) Personality Assessment Inventory ("PAI"). R. 228. The results indicated that Claimant has mild cognitive impairment involving his memory and concentration. R. 230. Dr. Nyenhuis further indicated that the results should be interpreted with caution due to the Claimant's limited knowledge of English vocabulary. *Id.* He also noted Claimant's symptoms associated with severe depression and recommended that he obtain a sleep consultation to improve Claimant's sleep hygiene. *Id.*

Dr. David Smith completed a consultive psychological exam including an MRFC in January of 2002. R. 218-225. On the Luria-Nebraska Neuropsychological Battery-II ("LNNB-II"), three of the five indicators of brain dysfunction fell in the abnormal range. R. 218-19. Claimant also received several other elevated scales including: intermediate memory, arithmetic, memory, tactile functions, and writing. R. 219. On the Wide Range Achievement Test-Revision 3 ("WRAT-3"), the Claimant tested at the fourth grade level in reading and arithmetic, and at the third grade level in spelling. R. 224. Dr. Smith found these scores consistent with the WAIS-3 scores. R. 224. In addition, Claimant's full scale IQ was in the extremely low range, R. 225, and his score on the Beck Depression Inventory again placed him in the severe range of depression. R. 224.

12

Dr. Smith also completed an MRFC. R. 214-17. He found that Claimant was moderately limited in the following five areas: 1) ability to carry out very short and simple instructions, 2) ability to maintain attention and concentration for extended periods, 3) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, 4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and 5) ability to travel to unfamiliar places or use public transportation. R. 214-15. He also found Claimant to be markedly limited in the following two areas: 1) ability to understand and remember detailed instructions, and 2) ability to carry out detailed instructions. R. 214. Dr. Smith indicated that Claimant was not significantly limited in all other work-related functions. R. 214-15.

## D.   ALJ'S DECISION

The ALJ's decision denying Claimant's SSI benefits followed the familiar five-step process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of his disability. R. 14. After reviewing the medical evidence, the testimony from two medical experts, and the Claimant's testimony, the ALJ found that Claimant's impairments were severe, but not severe enough to meet or equal a listed impairment. R. 17.

The ALJ made a determination on the Claimant's RFC after reviewing the MRFC completed by Dr. Smith and the testimony given by Dr. Kravitz at the supplemental hearing.

13

R. 17-18. He determined the following: Claimant can lift, carry, push, or pull twenty-five pounds frequently and fifty pounds occasionally; sit, stand, and walk up to six hours in and eight hour work day; has occasional postural limitations such as balancing, stooping, kneeling crouching, and crawling; and must avoid climbing ropes, scaffolds, ladders all heights, and moving machinery. R. 18. The ALJ determined Claimant's mental limitations as: a mild limitation in his ability to understand and remember short, simple instructions which increases to a moderate limitation when the Claimant is experiencing stress, and a marked limitation in his ability to understand, remember, and carry out detailed instructions. *Id.* Claimant also has moderate limitations in the following areas: 1) performing activities within a schedule, maintaining regular attendance, and punctuality within customary tolerances, 2) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, 3) interacting appropriately with the general public, 4) accepting instructions and responding to criticism from supervisors, and 5) traveling in unfamiliar places or using public transportation. *Id.*

The ALJ further discussed the medical evidence and evidence of the consultive RFC report, and determined that the Claimant could perform a significant range of medium work. R. 19-20. He found that Claimant's ability to perform a wide-range of medium work was impeded by his non-exertional limitations including the postural limitations, and the MRFC limitations. R. 20-22.

14

The ALJ continued by discussing the VE's testimony regarding the number of low-stress, medium exertion, unskilled jobs in the economy. R. 20. The ALJ ultimately found that the Claimant was capable of making a successful transition to the jobs indicated by the VE which totaled approximately 21,000 jobs, and found the Claimant not disabled. R. 20-21.

## III. LEGAL STANDARDS

### A.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision denying SSI benefits is governed by 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Section 405 provides that the findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The reviewing court has

the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B. DISABILITY STANDARD

A person is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 416.920. The sequential evaluation ends if the ALJ, at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: 1) whether the claimant is working and the work is a substantial gainful activity, 2) whether the claimant's impairment is severe, 3) whether the impairments meet or equal a listed impairment in 20 C.F.R., Pt. 404, Subpt. P, Appendix 1, 4) whether the claimant is able to perform his past relevant work, and 5) whether the claimant's age, education, and past relevant work experience in reference to his RFC, enables him to do other work. 20 C.F.R. § 416.920(a)-(f). A person's RFC is what he can do despite his physical and mental limitations. 20 C.F.R. § 416.945. The burden of proof is on the claimant through step four of the analysis; the burden then shifts to the Commissioner only at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Knight v. Chater*, 585 F.3d 309, 313 (7th Cir.

1995)).

## IV. ANALYSIS

Claimant raises four issues with the ALJ's decision. He argues that: 1) the ALJ ignored medical and psychological evidence of several of Claimant's impairments, 2) the ALJ failed to consider psychiatric evidence supporting Claimant's testimony regarding his medical and vocational limitations, 3) the ALJ failed to consider testimony of the VE that stress might preclude or reduce the jobs that Claimant would be able to complete and improperly assumed that travel to and from a job was attainable for the Claimant, and 4) the ALJ's step five determination was not supported by substantial evidence. Each will be addressed in turn.

### A. THE ALJ DID NOT IMPROPERLY IGNORE MEDICAL OR PSYCHOLOGICAL EVIDENCE IN THE RECORD.

Claimant first argues that the ALJ ignored medical and psychological evidence related to the Claimant's depression. Specifically he claims that the ALJ ignored evidence of: 1) Claimant's inability to serve on a jury because he is unable to sit for long periods of time, 2) the Claimant can not be confined to small spaces, 3) Claimant has difficulty in concentrating subsequent to his neurological deficits, 4) anhedonia, 5) anergia, 6) inability to manage his funds independently, 7) urinary frequency problems, 8) lumbosacral spine limitations, 9) dizziness while driving and walking, and 10) socially withdrawn and poor memory. In addition to the ALJ's failure to address these issues, the Claimant argues that evidence of the above limitations conflicts with the ALJ's finding that the Claimant can perform a significant

range of medium work.

The ALJ "must sufficiently articulate his assessment of the evidence to assure [the court] that [he] considered the important evidence . . . and to enable [the court] to trace the path of [his] reasoning." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). In addition, the ALJ is "not required to address every piece of evidence, [but] he must articulate some legitimate reason for his decision." *Clifford*, 227 F.3d at 872.

In Claimant's first three claims, he argues that the ALJ ignored evidence of Dr. Rovner's letter excusing Claimant from jury duty due to his problems sitting for a long period of time, being confined to small spaces, and difficulty in concentration due to his neurological deficits. R. 166. The letter was written on behalf of the Claimant one month after he first saw Dr. Rovner. R. 166, 171. In addition, after a nerve conduction study, and x-rays were completed, no evidence of severe neurological problems was found. R. 170. In addition, Dr. Mond opined that the Claimant had no limitations on sitting, R. 287, and Dr. Biale who completed a consultive exam, also thought Claimant could sit for six hours of an eight hour workday. R. 192. To the extent the letter was not consistent with later medical evidence found at Dr. Rovner's request it need not be discussed. Overall, the ALJ's discussion of Dr. Rovner's analysis was fair and appropriate.

Claimant next argues that the ALJ did not consider evidence of the Claimant's adnedonia and anergia. These symptoms are raised in Dr. Nyenhui's discussion of

18

Claimant's results on the BDI-II, in which he stated, "Specifically, [Claimant] endorsed feelings of sadness, hopelessness, anhedonia, anergia, irritability, and decreased concentration." R. 229. In his summary, Dr. Nyenhui recommended Claimant's continued work with Dr. Sicard and further opined, that Claimant was not at acute risk for self harm due to his anergia, but remained at a significant risk for suicidal behavior. R. 230. The ALJ's decision, specifically notes the Claimant's results on the BDI-II and his decreased concentration, anhedonia, and anergia. R. 15. Thus, the ALJ did not fail to consider this medical evidence.

Claimant next argues that the ALJ did not consider Claimant's inability to manage his funds independently. Dr. Smith performed a consultive psychological exam. R. 218-25. He completed two reports, dated the same day, one summarizing Claimant's results on the Luria-Nebraska, R. 218-19, and one summarizing his results on the WAIS-III, WMS-III, WRAT-III, and Beck Depression Inventory. R. 220-25. In the first summary, he opined that the Claimant would need help managing his own funds. R. 219. In the second report he indicated that Claimant would be able to manage his own funds. R. 225. Thus, to the extent that these two reports differ, the ALJ was proper in not relying on that evidence.

The Claimant next contends that the ALJ did not properly consider his urinary frequency problems. Claimant indicated that he had prostate problems that cleared up but then came back. R. 282-83. The ALJ discussed the prostate problem briefly in his decision stating that it had cleared up. R. 16. He did not discuss its recurrence. There is, however,

no medical evidence of the recurrence of the problem. The record is lacking in any documentation of a continued problem after the original episode which concluded with a positive result. R. 152. The Court finds that the ALJ did not err in failing to discuss this further.

The Claimant also argues that the ALJ failed to consider his lumbosacral spine limitations and dizziness while driving and walking. These issues were raised by Dr. Biale in his consultive exam. R. 186-89. The ALJ specifically noted the ME's discussion of Dr. Biale's exam and Claimant's lower back pain in his decision. R. 16, 17. The ALJ found that one of Claimant's impairments was lower back pain. R. 17. Furthermore, the radiology exam by Dr. Kovalsky revealed no lumbosacral spine problems. R. 183. Regarding Claimant's dizziness, the ALJ discussed this issue in his decision, R. 16, and accounted for it in his determination of Claimant's RFC by indicating that he was to avoid all exposure to heights and moving machinery. R. 18.

Finally, Claimant argues that the ALJ did not consider that he is socially withdrawn and has a poor memory. The ALJ discussed Both Dr. Smith's and Dr. Kravitz's findings on the MRFC indicating his limited abilities to interact with co-workers, the public, and supervisors. R. 18. In addition, the ALJ determined that Claimant had a marked limitation in his ability to understand and remember long detailed instructions, and a mild limitation in ability to understand and remember very short detailed instructions. R. 18. These limitations were considered and accounted for by the ALJ.

## B. THE ALJ DID NOT IMPROPERLY FAIL TO CONSIDER PSYCHIATRIC EVIDENCE.

The Claimant next argues that the ALJ ignored psychiatric evidence supporting his testimony that he becomes nervous, irritable, and sweats around people, and people stare at him while on public transportation causing him to miss his stop. Contrary to Claimant's argument, the ALJ discussed the psychological evidence in detail. He discussed Dr. Sicard's treatment of Claimant for severe depression with anxiety, and his description of the Claimant as isolative, irritable, and anxious about his financial situation. R. 15. He reviewed the neuropsychological test completed by Dr. Nyenhui including the BDI-II score which was consistent with severe depression. *Id.* The ALJ further reviewed the psychological examination performed by Dr. Smith indicating Claimant's overall intellectual functioning was deficient or extremely low. R. 16. Moreover, the ALJ reviewed the Beck Depression Inventory completed by Dr. Smith, again indicating severe depression. *Id.* Finally, the ALJ reviewed the MRFC completed by Dr. Smith and the ME's opinion regarding the MRFC.

To the extent that Dr. Smith and Dr. Kravitz disagreed on the MRFC, the ALJ generally credited the more severe limitation. For instance, Dr. Smith opined that Claimant was not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 214. Dr. Kravitz indicated that Claimant would be moderately limited in this area. R. 323-24. The ALJ also found Claimant to be moderately limited in this area. R. 18. The ALJ also agreed with Dr. Kravitz that the Claimant was moderately restricted in his ability to interact with the general

public, R. 325, 18, whereas Dr. Smith had found him not significantly limited in this area. R. 215.

The ALJ further noted that in making his RFC determination, he considered the Claimant's "allegations of limitation due to pain and psychological impairment." R. 18. He went on further to note that he found the Claimant's testimony somewhat credible because it generally followed the evidence in the record, although he experienced physical problems greater than the medical evidence supported. *Id.*

The ALJ's MRFC determination, closely tracking both the consultive psychological examiner and the ME, is supported by substantial evidence.

## C. THE ALJ DID NOT FAIL TO CONSIDER TESTIMONY FROM THE VE THAT CLAIMANT WOULD BE PRECLUDED FROM SOME JOBS DUE TO THE STRESS LEVEL.

The Claimant next argues that the ALJ ignored the VE's testimony that the stress level of the jobs indicated would reduce the number or preclude the jobs Claimant could obtain. The hypothetical from the ALJ indicated that the person has a mild limitation in his ability to carry out short simple instructions which becomes moderate when he experiences stress. R. 328-29. He clarified by stating that "any jobs that might be available would have to be non-stressful." R. 329. The VE responded that given all of the hypothetical facts, the individual would qualify for 8,000 assembly positions, 7,000 hand packing positions, and 6,500 inspection jobs. R. 330.

Upon further questioning from the ALJ, the VE indicated that these are low stress

jobs, with no interaction with the general public, and very little interaction with supervisors. R. 330. Further, the jobs do not require travel other than commuting to and from work. R. 331.

The Claimant's counsel then asked the VE if a person would be unable to maintain a job, if he experienced production work stress on a sustained basis that exceeded his threshold. R. 332. The VE agreed that a person would not be able to maintain a job that exceeded his stress level. *Id.*

Contrary to Claimant's contention, this additional testimony in response to counsel's questioning, adds nothing to the analysis. It is simply a true statement with no relation to the jobs actually named by the VE. The VE specifically indicated that these jobs were low stress. R. 330. Furthermore, even if they did involve some minimal level of stress, there is no indication that the Claimant must avoid all stress. The testimony of the ME indicated that Claimant had a mild limitation in his ability to follow short simple instructions which becomes moderate when he experiences stress. R. 323.

In addition, Claimant argues that the VE's testimony should not be credited because it assumed that the Claimant could travel to work. Again, the ME indicated that the Claimant's ability to travel was moderately limited. R. 326. Furthermore, the jobs are such that once the Claimant arrives at work, he has no additional travel involved, in contrast to his taxi driving job. Nothing in the record indicates a marked impairment in his ability to travel. R. 331. Thus, the ALJ's finding was supported by substantial evidence and the VE's

testimony was not improperly credited.

**D.    THE ALJ'S FINDING THAT THE CLAIMANT CAN PERFORM A LIMITED RANGE OF MEDIUM WORK AVAILABLE IN THE NATIONAL ECONOMY IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

The Claimant finally argues that the ALJ's finding under paragraph twelve is not supported by substantial evidence. Substantial evidence is more than a mere scintilla of evidence, but only "such relevant evidence that a reasonable mind might accept it as adequate to support a conclusion." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citing *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)).

Claimant's argument on this issue builds upon his argument that the ALJ failed to consider the entire line of medical and psychiatric evidence previously addressed. As discussed above, much of what Plaintiff alleges was ignored by the ALJ, was in fact addressed in his decision. Furthermore, as the ALJ found, the medical evidence appears to support Claimant's claims of pain, however, there is no indication of the source or cause of the back or chest pain in the medical evidence. The x-rays of the back indicated no problems that could be causing the severe pain, and the nerve conduction study and the cardiac evaluation also failed to reveal any medical explanation for Claimant's chest pain. In addition, the ALJ thoroughly discussed the psychological evidence and credited the diagnosis of severe depression. Also, both Dr. Mond, the ME at the first hearing, and Dr. Kravitz, the ME at the supplemental hearing, opined that the Claimant did not meet or equal a listing.

Moreover, the ALJ's determination of Claimant's MRFC was substantially similar to

24

that completed by both the consultive examiner, Dr. Smith, and the testimony of the ME, Dr. Kravitz. The hypothetical to the VE accounted for his moderate ability to travel by limiting the individual to jobs with one work site. In addition, the jobs listed by the VE had little interaction with supervisors, no interaction with the public, and were low stress, unskilled work. Having found that the ALJ properly addressed the evidence presented, this Court finds that the ALJ's decision that the Claimant could perform medium unskilled work was supported by substantial evidence.

## V. CONCLUSION

For the reasons stated above, **the Commissioner's motion for summary judgment is granted and the Claimant's motion for summary judgment is denied. The decision of the ALJ is affirmed.**

**SO ORDERED THIS 21ST DAY OF AUGUST, 2003.**

**MORTON DENLOW**
**United States Magistrate Judge**

**copies mailed to:**

Agustin G. Garcia, P.C.
53 West Jackson Blvd.
Suite 730
Chicago, IL 60604

Attorney for Plaintiff

Edward J. Kristof
Special Assistant to the United States
Attorney
200 West Adams Street
30th Floor
Chicago, IL 60606

Attorney for Commissioner